SPANN *v.* GULLEY, et al.

No. 40670 March 17, 1958 101 So. 2d 337

*Bernard Gautier,* Pascagoula; *Wm. S. Murphy,* Lucedale, for appellant.

*K. Wiesenburg, Merle F. Palmer,* Pascagoula, for appellee.

KYLE, J.

B. D. Spann, plaintiff, filed suit in the Circuit Court of Jackson County against Robert C. Gulley and M. H. Dossett, doing business as a partnership under the trade name of Gulley Grocery Company, seeking to recover the sum of $1375 as rent for the use of a certain lot in the City of Pascagoula, fronting 150 feet on the east bank of East Pascagoula River, and extending eastwardly approximately 215 feet to the west wall of a concrete block building owned and occupied by the defendants, and on which there was located a small dwelling house and a corrugated metal warehouse building. The plaintiff alleged in his declaration that he agreed to lease the above described property to the defendants for a period of one year from October 20, 1948, to October 19, 1949, for the sum of $300 to be paid at the rate of $25 per month, which the lessees agreed to pay; that on October 29, 1948, the plaintiff executed, in duplicate, a lease contract, leasing said property to the defendants, and mailed said lease contract, so executed by him, to the defendants with the request that both copies thereof be executed and that one copy be returned to him; that the defendants took possession of the above described property and the buildings located thereon, on October 20, 1948, and remained in possession thereof throughout the first year term of the lease and continually thereafter until May 16, 1953, when they vacated said premises after notice given to them in writing on April 10, 1953, conformable to the provisions of the lease. The plaintiff further alleged that the defendants, after taking possession of the property, remained in complete and absolute control thereof until May 15, 1953; that they rented the residence on said property to

third persons, and arranged with Douglas Public Service Corporation to maintain a bonded warehouse on said premises; and that they used the open space on said leased premises as a parking lot for their trucks. The plaintiff further alleged that the defendants had failed, neglected and refused to pay the plaintiff the agreed rental on said property for the period from October 20, 1948, to May 20, 1953, and in consequence thereof were indebted to the plaintiff in the sum of $1375, for which amount the plaintiff demanded judgment.

The plaintiff also added a second count to his declaration, in which he asked for a judgment for the reasonable rental value of the use of said property during the above mentioned period of time, such reasonable value being not less than $50 per month.

A copy of the above mentioned lease contract was attached as an exhibit to the declaration.

The defendants in their answer admitted that the plaintiff was the owner of the property, but denied that the plaintiff had agreed to lease the property to the defendants for the sum of $25 per month or had executed a lease agreement to that effect. The defendants admitted that they had taken possession of the property on October 20, 1948, but denied that they had taken possession of the property under any lease contract, and averred that they had taken possession of the property by virtue of a written authorization in the form of a letter from the plaintiff's attorney, dated October 20, 1948, a copy of which was attached to the defendants' answer. The defendants admitted that they had vacated the premises on May 16, 1953; and the defendants denied that they were indebted to the plaintiff in any amount as rent for the use of the property.

The case was tried before a jury at the April 1957 term of the circuit court, and the jury returned a verdict for the plaintiff in the sum of $300, and judgment was rendered in favor of the plaintiff for that amount. The

plaintiff filed a motion for judgment notwithstanding the verdict, and asked that a judgment be entered in favor of the plaintiff for the sum of $1350, being the amount of rent due for the period from November 20, 1948, to May 20, 1953. The defendants also filed a motion for judgment notwithstanding the verdict, and alleged as grounds therefor that the evidence in the case failed to show any new contract entered into between the parties, after the plaintiff had written his letter of October 20, 1948, and that the evidence failed to show any mutual abandonment of the old contract entered into on October 20, 1948. The court overuled both of the above mentioned motions. The plaintiff and the defendants then filed separate motions for a new trial, and those motions were likewise overruled.

From the judgment of $300 rendered in his favor the plaintiff has prosecuted this appeal, and the defendants have filed cross assignments of errors.

Three points are argued by the appellant's attorneys as ground for reversal of the judgment of the lower court: (1) That the court erred in refusing to grant the plaintiff's instruction for a directed verdict at the conclusion of all of the testimony; (2) that the court erred in overruling the plaintiff's motion for a judgment for the sum of $1350 notwithstanding the verdict; and (3) that the court erred in overruling the plaintiff's motion for a new trial. The principal points argued by the appellees' attorneys in support of their cross appeal are: (1) That the court erred in granting to the plaintiff an instruction which appears on page 18 of the record; (2) that the court erred in refusing to grant the defendants' request for a directed verdict, and in overruling the defendants' motion for a judgment notwithstanding the verdict; and (3) that the court erred in overruling the defendants' motion for a new trial.

After a careful examination of the record, we think the court erred in refusing to sustain the plaintiff's mo-

tion for a judgment for the sum of $1350 notwithstanding the verdict. Our decision on that point disposes of the entire case and makes it unnecessary for us to consider the other points argued by counsel for the respective parties.

There is no substantial conflict in the testimony of the witnesses. The essential facts developed by the testimony are as follows: Robert C. Gulley and M. H. Dossett were engaged in the operation of a wholesale grocery business in the City of Pascagoula under the trade name of Gulley Grocery Company. B. D. Spann, who resided in Moss Point, owned a lot in the City of Pascagoula fronting 150 feet on the east bank of the Pascagoula River and extending eastwardly, between Krebs Avenue and the right of way of L & N Railroad, approximately 215 feet, to the west line or west wall of a concrete block building which was owned and occupied by the Gulley Grocery Company. There were two buildings located on the lot, one being a corrugated metal warehouse building, and the other being a small residence house. Gulley and his partner, during the latter part of October 1948, were getting in a large amount of merchandise, and found that they were in need of additional storage space. The warehouse on the Spann lot was vacant, and Gulley contacted Spann's attorney, H. W. Gautier, whose office was located in Pascagoula; and Gulley told Gautier that the grocery company was in need of storage space, and that he would like for Gautier to get in touch with Mr. Spann and get permission for him to use the warehouse on the Spann property for the storage of merchandise. Gautier took the matter up with Spann by telephone, and then wrote Gulley a letter on October 20, 1948, which is as follows:

"H. W. GAUTIER
Attorney-at-law
Pascagoula, Miss.

October 20, 1948

"Mr. Robert C. Gulley
c/o Gulley Grocery Company
Pascagoula, Mississippi

Confirming telephone conversation between you and the writer and Mr. B. D. Spann, the owner of the former coal dock property which extends from your place of business on the South side of Krebs Avenue westward to the Pascagoula River, Mr. Spann wishes to advise that you may take possession of this property as his tenant, on a month to month basis, subject to termination at his pleasure, beginning the 20th of October, 1948 and continuing until termination.

"You may use the buildings on said property and subject the property to any lawful use, and consideration for the rent will be the repair, by you at your expense, of the buildings to make them tenantable and maintaining them in such condition during the period of your occupancy as a tenant of Mr. Spann.

Yours very truly,

/s/ H. W. Gautier."

A few days after that letter was written Gulley came to Gautier's office and stated to him that he had received the letter, but since he intended to lease the warehouse to Douglas Public Service Corporation so that they could establish it as a bonded warehouse in which he could store his goods and get bonded warehouse receipts to be used as collateral, Douglas Public Service Corporation insisted that he get a lease from the owner. Gautier told Gulley that he thought Mr. Spann would give him a lease, and that he would take the matter up with Mr.

Spann immediately. Gautier then prepared two original copies of a formal lease contract agreement to be executed by the parties, and mailed the two copies to Mr. Spann on October 28, 1948, to be executed by him. Gautier also wrote a letter to Mr. Spann, in which he advised Mr. Spann that Gulley had requested a lease, because he wanted to have Douglas Public Service Corporation establish a bonded warehouse on the property.

The two copies of the lease contract were returned to Gautier properly executed by Mr. Spann prior to November 1, 1948, and the two signed copies were then mailed by Gautier to Gulley, with a letter dated November 1, 1948, in which Gautier requested that Gulley and Dossett sign and acknowledge both copies before a notary public and return one executed copy to him.

The lease contract which Gautier prepared, a copy of which was attached as an exhibit to the plaintiff's declaration, covered a period of one year from October 20, 1948, until October 19, 1949, and provided for the payment of $25 per month as rent for the use of the property. By the terms of the lease contract, the lessees were given the right to make such repairs on the buildings as might be necessary to make them serve their needs and the lessees were to maintain the buildings at their own expense during the period of the lease; and in the event the lessor should sell the property or divest himself of the title, the lease could be terminated on thirty days notice to the lessees.

Gulley, who was called to testify as an adverse witness by the plaintiff, testified that he received the two copies of the lease contract, with the letter dated November 1, 1948, but never signed either of the two copies. He was asked whether he still had the two copies of the lease contract and the letter in his possession. He stated that he did not have them, that to be perfectly frank about the matter he had thrown them in the waste basket, because they did not conform to the letter which he

already had in his possession, dated October 20, 1948. Gulley stated that he did not discuss with Mr. Gautier whether or not Mr. Spann was going to charge him rent for the property, when he asked for the formal lease. He stated that he did not write Mr. Spann or Mr. Gautier to inform them that the terms of the lease contract were not satisfactory, and he never told either of them why he had not returned the two copies of the lease to them. Gulley admitted that he later entered into a written agreement with the Douglas Public Service Corporation on November 16, 1948, by the terms of which he leased the warehouse to Douglas, and agreed that any and all goods placed by Douglas in the warehouse should be free and clear of any claim or demand which Gulley Grocery Company as lessor might possess. Gulley also admitted that the Gulley Grocery Company entered into a sublease agreement with Douglas on March 1, 1951, whereby the Gulley Grocery Company leased the above mentioned warehouse to Douglas on a tenancy from year to year, or until the tenancy should be terminated by thirty days written notice given by either party for the rental sum of $1. Certified copies of both of the above mentioned instruments, which had been duly recorded in the office of the chancery court clerk of Jackson County, were introduced in evidence as exhibits to Gulley's testimony.

Gulley testified that he stored his own merchandise in the warehouse which he had subleased to the Douglas Public Service Corporation and borrowed money on the merchandise, and that he rented the small dwelling house which was located on the Spann lot to J. S. Patrick for approximately one and one-half years at a monthly rental of $20 per month, and that he rented the small dwelling house to J. W. Clegg, a former employee, sometime between the year 1948 and 1950 for the sum of $20 per month. He used a part of the lot as a parking lot for the storage of trucks.

On direct examination by his own attorney Gulley stated that he never paid any rent for the use of the

Spann property, and that neither Mr. Gautier nor Mr. Spann ever contacted him about the payment of rent until 1953.

It is argued on behalf of the appellant and cross appellee that the evidence shows conclusively that the appellees occupied the premises owned by the appellant after November 1, 1948, under the lease executed by the plaintiff and delivered to the defendants on November 1, 1948, and that the appellees were legally liable for the payment of rent for the 4½-year period during which they continued to occupy the leased premises after that date, at the rate of $25 per month, and that the court should have entered a judgment for the sum of $1350. It is argued on behalf of the appellees and cross appellants on the other hand that the lease of November 1, 1948, did not go into effect for the reason that there was never a meeting of the minds between Robert C. Gulley and B. D. Spann as to the formal agreement prepared and executed by Spann, and that Gulley never agreed to execute the proposed lease.

 █ We think the formal lease contract which was executed by Spann and mailed to Gulley after Gulley had requested a formal lease, was binding upon the appellees who remained in possession of the property after receipt of the formal lease contract and yet failed to notify the appellant that the terms of the lease agreement were unsatisfactory. The formal lease contract had been prepared at the request of Gulley to satisfy the requirements of Douglas Public Service Corporation and to enable Douglas to make use of the corrugated metal warehouse as a bonded warehouse, in which Gulley and Dorsett expected to store merchandise upon which they could borrow money.

The right of Gulley and Dossett to remain in possession of the property under the terms of Gautier's letter of October 20, 1948, was subject to termination by Spann at his pleasure; and when Gulley and Dossett asked for

a formal lease contract which would be acceptable to Douglas Public Service Corporation and Spann caused to be prepared and executed such formal lease contract and mailed two signed copies of the formal lease contract to Gulley, Gulley had no right to throw the two signed copies in the waste basket, without notifying Spann that the formal lease contract was unacceptable. It was the duty of Gulley and Dossett to execute the two copies of the lease contract and return one executed copy to Spann, or to notify Spann that the lease contract was unacceptable and to vacate the premises, unless Spann agreed to some other form of lease. Gulley failed to do either, but remained in possession of the property, and apparently satisfied Douglas Public Service Corporation that he had a right to the continued use of the property. Gulley and Dossett were therefore liable for the payment of the $25 per month rent.

"To render a written lease valid and binding on the lessor, it is not essential that it be signed by the lessee. It may become effectual by virtue of its execution by the lessor and its delivery to and acceptance by the lessee, * * *. Moreover, in the absence of statutes to the contrary, it is equally well established that it is not essential to the validity of a lease for the purpose of binding the lessee that it be signed by the lessee, provided he accepts the lease and acts thereunder, which acceptance is generally shown by taking possession or by paying the rent. The same has been held true although the lessee did not in fact enter into possession." 32 Am. Jur., 59, Landlord and Tenant, par. 37.

██ We think there was no issue of fact to be submitted to the jury. But if there was an issue of fact to be submitted to the jury, that issue was presented to the jury in the plaintiff's instruction which appears on page 18 of the record. In that instruction the court submitted to the jury the question whether or not the new agreement embodied in the formal lease contract which the

plaintiff signed and mailed to the defendants for execution by them and the defendant's actions after receipt of the two signed copies of the new agreement extinguished the permission granted in the letter of October 20, 1948. We think the instruction contained a correct statement of the law; and the jury by its verdict found for the plaintiff on the issue presented in the instruction. The jury, however, failed to return a verdict for the proper amount of rent. The defendants admitted that they remained in possession of the premises until May 16, 1953; and the defendants were therefore liable for the payment of rent at the rate of $25 per month for the entire time they remained in possession under the lease agreement. The plaintiff was therefore entitled to a judgment for the sum of $1350, and the court should have sustained the plaintiff's motion for a judgment for that amount. Boyle Gin Co. v. W. F. Moody & Co., 188 Miss. 44, 193 So. 917; Gardner v. Reed et al., 207 Miss. 306, 42 So. 2d 206; Palmer v. Gardner, 226 Miss. 123, 83 So. 2d 800; City of Indianola v. Love, (Miss.), 85 So. 2d 812.

For the reasons stated above the judgment of the lower court will be reversed on direct appeal, and judgment will be entered here for the appellant, B. D. Spann, for the sum of $1350; and the judgment of the lower court will be affirmed on the appellees' cross appeal.

Reversed on direct appeal and judgment rendered for the appellant, and affirmed on cross appeal.

*Roberds P. J.*, and *Arrington, Ethridge* and *Gillespie, JJ.*, concur.